Case number 19-3945, Ashley Zuress v. City of Newark OH et al. Argument not to exceed 15 minutes per side. Mr. Schlein you may proceed for the appellant. All right before we do proceed I think you should call the court to order. Certainly. Hear ye, hear ye. Hear ye, hear ye. The United States Court of Appeals for the Sixth Circuit is now in session. All persons have in business before this honorable court draw near, give attention, and ye shall be heard. God save the United States in this honorable court. Thank you. All right counsel for appellant may proceed. Thank you, your honor. My name is Sam Schlein. May it please the court for appellant Ashley Zuress, I'd like to reserve five minutes for rebuttal. Very well. Ms. Zuress brings this appeal as a district court erred in several important factors in granting summary judgment for defendant officer David Burris. First, this district court failed to give credence to two qualified experts in Ms. Zuress who made reports based on a full review of the record and also invaded the importance of the word by finding Ms. Zuress's record, excuse me, experts not to be persuasive. Also the district court erred in granting summary judgment to officer Burris by finding that the use of force against her by K-9 Ike did not cause unreasonable in the grab factors. The video, there's a replete video and deposition testimony that shows there's a genuine issue of material fact as to whether or not the force used against Ms. Zuress at the time it was used was objectively reasonable and further the counsel what's what's the counsel counsel what's the genuine issue of material fact there are three videos that I've watched it looks like the facts are on the videos and I don't see a dispute as to those videotaped facts what what facts do you say are in dispute? The facts that are in dispute, your honor, we believe are. I'm sorry I didn't hear you what did you say I'm sorry you hear me better now yeah yes I apologize the facts that are in dispute while the actual actions that took place are videotaped it's the reasonableness that was used and the presumptions of the officers including the danger how's that how's that an issue of fact I mean the facts are what the facts are and isn't isn't that a legal determination whether these facts arise to excessive force or not? Whether or not it rises to level of excessive force under the grand factors are a question of fact whereas qualified immunity is a question of law so here are some of the factors the questions of fact are the level of resistance that Ms. Zuress was giving at the time that the force was used whether or not she presented a danger to the officers or also the level of force that was used whether or not it was reasonable to effectuate the arrest. We believe that all of these factors especially a summary judgment stage cut in favor of Ms. Zuress. At the time she was the force by K-9 Ike was used against her. Deposition testimony from the officers who were at the scene and also the deputy chief of Newark Police Department found that she was not fleeing under the definition of Newark Police Department's she was not actively she was not in a high level of resistance in fact officer Sean Henry who was at the scene said in deposition that Ms. Zuress when the force was used was at a low to medium level of resistance and officer who was the officer who pulled Ms. Zuress over had stated that he believed that Ms. Zuress was just planning on arguing with her while they were standing there. Ms. Zuress it is. Counselor I was just I you said previously that reasonable reasonableness is a question under the Graham factors is a question of fact in the Supreme Court tell us that it's a question of law and haven't we said so as well? You have I apologize I misstated that your honor. Okay thank you. But going going the experts is this court has found that using police guidelines is something that is amenable for expert opinion and can help that a jury finds whether or not a reasonable force was used based on the factual circumstance. The other issue with the court's error is that by going with the undisputed facts in the video seeing that Ms. Zuress wasn't actively resisting seeing that she was after she was on the ground she was fully under police control while the force was being used is a continued error by that not engaging in a segmented analysis. One of the counsel if counsel it I thought I heard you say something about the local police guidelines does that control or even inform the constitutional analysis that is to say if you have two cities with different guidelines would exactly the same activity be constitutional in one city and unconstitutional in another? No your honor the local police guidelines do not inform the constitutional argument but we believe it's illustrative here that even if a local police guideline is incorrect in what the law is but shown that Ms. Zuress under their police guidelines is not actively resisting is not fleeing under their guidelines shows that the level of force that officer Burris should have been using if you were going by guidelines was even outside of that for their policy even if the guidelines aren't illustrative of a constitutional issue. Well it sounds like sounds like you are saying that because the city said she wasn't fleeing then those officers are more constrained than some other city where maybe that they did consider it fleeing. No I don't believe that to be the case and I apologize if the argument seems so if the officer were in a city where it was seen where Ms. Zuress was considered to be fleeing at the time where force used the force used in this situation would still be constitutionally unsound there's also the situation of the segmented analysis that the district court failed to engage in Ms. Zuress from the complaint and through the prosecution of her case has argued that there were not one but two uses of canine force against her that on the evening of March 2nd 2016 the initial force when officer Burris effectuated the arrest and then they continued gnashing, clawing and gnashing, gnawing and biting of Ms. Zuress while she was on the ground. Once she was taken to the ground Ms. Zuress or excuse me canine officer Burris continued to allow biting on her arm for roughly 20 seconds after Ms. Zuress was deemed to be under control by several officers there. Short within moments of Ms. Zuress being taken to the ground she was descended upon by several officers who after checking the jeep to ensure the canine properly cleared it placed hands knees feet on Ms. Zuress. The video clearly shows that she wasn't struggling with them and deposition testimony of the officers confirmed that she was not continuing to resist and that officer Purty had one arm under control and canine Ike and officer Burris had another arm under control. After my recollection counsel after the the officer did control her her other arm then he went to the dog to get the the dog Ike to release light and that he was rather prompt in his efforts to get Ike to release his bite but Ike was refusing that's all I mean I don't see an intentional delay or an undue delay in the officer trying to get the dog off it's just that he was he was unsuccessful while because the dog was doing what the dog was his job I think I believe that there was an intentional delay by by officer Burris to try to get the dog off yes your honor I do believe that there was an intentional delay in trying to take off Officer Purty who is also a canine officer for the city of Newark and deputy chief McKee who is a part of the training program says that these dogs are trained by command and will listen by command to verbally out or release a bite from the dog what happened here was canine Ike was allowed to nosh and if you see the video he's he's thrashing his head back and forth causing significant and permanent injury to Ms. Zurest along there. Officer Purty and other officers testified that 19 seconds before officer Burris was able to release Ike but he was still allowed to continue to bite that is a so is your is your argument counsel that because the dog would have or was trained to release on verbal command the officer chose to manually try to extract the dog that your clients clearly established constitutional rights were violated is that is that the argument because I think the officer says well yeah I chose to manually try to remove the dog because I thought if I just gave the verbal command the dog I wouldn't have him under my physical control and the dog might re-engage or latch on to someone else no your honor it's not the the source of the out of the dog that is the constitutional issue here it's the length of time whether or not he would have provided the out command or used a manual control it's the delay in taking the dog off the video does show there was a brief issue where Ike testimony shows Ike was caught on Ms. Zurest's sleeve before the out was completed but the video also shows there was a significant roughly 19 second delay between when Ike was attempt when officer Burris fully attempted to take Ike off and when Ms. Zurest was under the dog after the the free arm was secured the the 19 seconds or 24 seconds I think is his efforts to get get the dog's bite unclenched I mean is there actually a delay between him officer Burris securing your client and his efforts to get the dog off is there a delay there or are you talk totally talking about the time it took him to get the dog I don't think I think you got a better case if he secured your client and then waited a half a minute or two minutes to to try to get the dog to release the bite but here I don't see a delay and if there is one tell me where it is or how long is the delay we believe is the genuine issue of material fact that the jury has to be able to decide whether or not officer Burris did as as you're saying move immediately to remove canine eyes isn't that what the video shows I mean if it doesn't tell me where where I should look I believe we believe the video does not show officer Burris initially and then for at least 15 to 20 seconds afterwards attempting to out Ike he is standing over there but it is not clear to us that he is attempting to out Ike rather than permitting Ike to continue to gnash and thaw I'll take I'll take a look at the videos again then okay thank you any further questions at this time I mean counsel you'll have your your five minute rebuttal with Judge Boggs Judge Lawson any questions no I'm good all we're officer Burris good morning your honors may it please the court mr. Schlein my name is Greg Beck and I am here on behalf of the city of Newark of course the plaintiff the appellant presents these two issues I'd like to focus on the discussion that we just had and it had to do with this concept that the appellant is segmenting the actual use of force I believe the district court properly analyzed this under the Graham versus Connor analysis and systematically and very adroitly identified those three factors and then apply the totality of circumstances and basically concluded that there was no constitutional violation because the decision to use the force was objectively reasonable there was no real discussion about this new segmentation but what the court's finding net was the court never went to the issue of a clearly established right so as a threshold matter I would submit to the court that at the time that this occurred and I think even now there has been no decision from the Sixth Circuit or even the Supreme Court that suggests that this delay or this problem is a clearly established right which if it occurred would be somehow objectively unreasonable so I think we start with that premise that even if the trial court would have gotten to that issue it would have still implemented qualified immunity but with respect to this event that's captured on the video it is obvious that what happened was is that once officer Burris closed with her and she was on the ground with the dog the first thing that he did was to order the other officers who was there to clear the vehicle because it was still an issue of danger and if we look at all of these cases where the use of force is being challenged there is a there is a consistent theme throughout each one of them and that is that there is a danger to the officer or to the public at large the district court talked about this in the sense that when evaluating these factors of you know the severity of the crime and whether or not there was a threat on that second prong it was pretty clear based on what these officers knew which by the way is the touchstone of your inquiry what did these officers know all they knew was is that this person fled from a felony stop they didn't know who she was and given the circumstance she posed a danger because of where she was she was standing in the crook of the door and this were extensively outlined in the brief but the officers were asked directly about this both officer Burris and officer Purty in their depositions were questioned up to the extent suggesting well because this was a young woman did you feel there's any danger officer Burris said I didn't know anything about her she could have been a black belt in jujitsu and twisting like a pretzel officer Purty said yes she was a young woman but she could still kill me and you have to make that assumption in order to be safe on the street so from a tactical standpoint from what everything these officers knew this was still a dangerous situation because of attendant to her position her ability to reach in the car their ignorance about whether or not there was somebody else in the car so when officer Burris closes on her and she is on the ground you see on the video that he points to officer Purty to clear the car even though Ike went there he ordered Purty to do it so there was that first delay but once the once officer Purty clears that vehicle then you see officer Burris reposition himself to remove Ike now this is standard protocol there are two ways you can out a dog you can out the dog with a command or you can use what they call it's the reflex opposition move and when you do this you're pushing in and this is explained by officer Burris you push in and the dog's mouth actually opens and a bite actually lifts but in this particular case when he tried to extract Ike he was caught his fang was caught on her sweater and you actually see that and so he kept pushing in so when he's pushing in he's not gnawing and gnashing as suggested by my colleague the mouth again the the jaw is actually opening and that's what's going on and so he does his best to extract him the reason that officer Burris didn't just use an out command because miss Burris was of course failing and she was obviously in discomfort and pain there's no question about that and any reasonable person would be but if he outs that dog on a command and then the suspect miss Burris miss Zuris moves thrashes screams that dog could reattach and then that's a whole nother bite and so what he's really trying to do is is balance the most effective way to control the situation and control the dog so he clearly moved I think according to the video as quickly as he could in order to extract the dog and I don't think there's any real issue with respect to that but let's suppose that there is some sort of five-second delay or something in there again I think this falls clearly within the ambit of objective reasonableness I mean this court has ruled 32 years ago in and sort of like the Bellstone case which is Robinette versus Barnes where you know in that particular case the dog was sent into a building at night and unfortunately bit the suspect on the neck and the suspect died but in that case the court was clear that when there are issues of danger when it's actually more safe for everybody and to reduce the risks use of a canine even in this type of situation in that case where she actually died immunity was appropriate and actually the the court goes even further and suggests that anytime and anytime that an officer is required to apprehend or take control of it's dangerous and that the use of a canine will more than likely reduce those risks even though everybody recognizes that when you use a canine or you use an ask or you use pepper spray or use a taser that there is going to be some inherent problem or pain or injury associated with that which sort of brings me back to this whole notion of the courts initial analysis and that was that this was a constitutionally protected activity I mean first of all and this by the way is what as this court knows law enforcement faces day in and day out what to do for non-compliant suspects. What is interesting in this case is that the appellant has not challenged in any way the fact that these officers were entitled to treat this as a felony stop. They came out with guns drawn and they had every reason to believe that she posed a danger and if you look at all of these cases that analyze excessive force in and probably the two most informative that we have right now before us from the Supreme Court they were authored after this event are Los Angeles versus Mendez and Kistler versus Hughes. In both of those cases in which deadly force was used the Supreme Court said in its analysis that it was the danger posed in both of those cases that allowed qualified immunity to attach and establish that the objective reasonableness was there. I mean in the Mendez case as you know those officers walked into a shack without a warrant and encountered two people sleeping when one of the occupants was surprised he reached for what was a actually a pellet gun but they thought it was a rifle and they both shot and of course the Supreme Court also dispensed with the provocation rule and part of that argument in that case was is that the officers engaged in conduct which precipitated the necessity of force and the Supreme Court said we're not gonna do that. No we're gonna look at what the officer knew at the instant that the was the danger. Similar in Kistler. Kistler was in a similar situation where they had complaints about a woman wielding a knife. The concern there was that she was acting erratic. When the three officers approach her separated by a chain-link fence she doesn't drop the knife. After being pulled one of the officers drops under the fence line and shoots her. Again the Supreme Court said look we're looking at what the officers knew and what they knew at that time was that this person may have posed a danger did not follow commands and so it's the it's the danger issue that's there which in this case was properly analyzed by the trial court. Trial court recognized that given the fact that this woman had an association with Mr. Grooms. Mr. Grooms was well known by all these officers. He had a drug history. He had a criminal history. There was a felony warrant out for him. He was known to carry a weapon and there was a suspicion that he was something that we can't ignore because when we analyze what the officers knew knew at the time that is the key. Not only that when this vehicle pulls away 19 seconds after the stop no one knows who's in it. No one knows how many people are in it and it was actually good police work that they were able to stop this car within I think three minutes but when they stopped that car they practically took the position that this was a dangerous situation and it was because of that that they came out in the felony stop mode. But the plaintiff in this case has fully admitted every aspect of her non-compliance. I mean I was very impressed with her candor in her deposition. She admitted that she made some terrible decisions. If she she admitted that if she had just simply stayed in the car on the first stop none of this would happen. She admitted that the decision to flee was not a good idea. She admitted that she should have listened to Officer Percy when he backed up. Those admissions don't mean anything. I mean you can't have parties admit to conclusions of law or whatever. I mean they could admit to the facts but her opinions that's really irrelevant. And you're right. I apologize for that. The facts I see it are not in dispute. They're on the video. And often in these cases there'll be an argument yes we have a video but it's incomplete. There's something else that wasn't filmed that's that's relevant and material to the case. I just don't see that argument here. I see everything he need is on the videos. Is that your position too? It is your honor. I think and in fact one of the interesting aspects of the video is if you look at the video of the Percy cruiser cam you see very clearly his very strong direct command. You see the plaintiffs listening and turning and actually looking at him. So she's looking at an officer with a gun drawn but he gives her those three direct commands and she does not comply. Then you hear him say to Officer Burris she's not complying. She's not cooperating. That's what then leads Officer Burris to hit the dog. But what about a warning? So is there anything to the notion that the officer was required to give a warning and a reasonable time to comply before releasing the dog? I mean I know the officer gave a warning here but it's at least arguable that there wasn't a reasonable time to comply. Well she still didn't comply to the three or four direct commands that came there. I think that the and she was warned but again these officers were looking at more at the situation and the potential danger that it posed. And this is always the same sort of situation where the officers are called upon to how do you respond to someone who's not compliant? I mean that is the dilemma. They knew they had to arrest her. She committed a crime right in front of them. This wasn't a situation where they could just let her walk away or something. They actually had to take her into custody and they also had to make sure that no one else was in this car and that no one else and they had no idea whether there was contraband. I mean the whole thing all stems back to Mr. Brooms. So the fact is a warning was given and yeah the warning was about two seconds. I mean I don't see the warning as being effective. There's a warning and then almost instantly the dog is released. The more important question is does the Constitution require a warning before an officer releases the dog to get a suspect? And I think that's the critical and is there a case that holds a warning is required before a dog is released? No, your honor. That's kind of the end of the story, isn't it? It is. They argue that there should be a warning but unless the clearly established law requires it, they don't have a claim, I don't think. That is correct and that is our position. Even if we were to entertain that question, there is no clearly established right that requires that type of warning in this case. The only other point I'll make and then I'll concede the rest of my time is that with the issue with the experts, I think because of the video, because of the evidence, the use of the experts was totally unnecessary in this particular case and I think the district court's decision on that was correct. Well, the experts I think he argued would be for the jury. If you got past summary judgment, then the jury might, there might be some value for the jury but we're not that stage. We're at the summary judgment stage so I guess the real question is are the experts needed for the judge to rule on summary judgment and I don't think they even argue that it is. Right, I agree. I think that was a good position. Without any further questions, I'll rest my time. Okay, any further questions, Judge Boggs, Judge Larson? No. Okay. Rebuttal. Five minutes rebuttal. Thank you, Your Honor, and I will start by respectfully disagreeing with Mr. Beck that Officer Burris was not on clear notice that the type of force that he allowed K-9 Ike to effectuate against Ms. Zurest was not a clearly established right. Officer Burris, as Mr. Beck pointed out, this court's poll star with K-9 force was Robinette decided in the late 80s. However, there's also been several cases since there, including White v. Horton and Campbell v. City of Springfield and several others that show where the poll stars on either side of reasonable force is. On the one side with Robinette, you had a dangerous suspect who was fleeing and accused of a very dangerous felony. On the other side, you have situations where suspects are not resisting, not fleeing, and not accused of dangerous felonies. The idea that every case has to have, every use of force has to have an all force case previously decided would make, would basically give police officers a single use, a single unreasonable use of force for free. Officer Burris should have known that when a suspect was not fleeing, was not accused of dangerous felonies, she was only charged with failure to follow the order of a police officer and obstructing official business, which were later only adjudicated as misdemeanors against her, are inherently non-dangerous crimes. But see, counsel, see the officer doesn't know if she's is a loaded gun in the car, I understand. He does not know if she has the gun on her person or not. And she is not complying with the commands. And he doesn't know if she's going to turn around and shoot at him. So the fact that he doesn't know her history, he doesn't know the dangerousness of this person at that point. And he's not in a safe position when she's refusing to, to, to allow him to secure her. I apologize. If I could interrupt Judge Griffin, we've lost Judge Larson. We're trying to get her back right now. Oh, all right. We're bringing Judge Larson into the courtroom now. Judge Larson, can you hear us? Yes, I can. Wonderful. Okay. I think we're in the middle of an answer to a question. Counsel, do you remember where we were? I believe, Judge Griffin, you had a pending question about the danger that Ms. Zeress posed to the officers. Is that correct? Yes. I think I asked you, you were saying that it was obvious that she was not dangerous in the situation. And I said, the officers didn't know that. And they didn't know if she was armed or not. And when she refused to obey their commands so they could secure her, what's wrong with the argument that they have a right for their own security to get her in a situation where she could not use a weapon against them? So what's wrong with that argument? There's nothing wrong with the argument that the police can believe that someone's dangerous. As we mentioned previously, the crimes that she was accused of were nonviolent crimes. But the police officer's own actions that night indicate that they don't believe she actually was a danger. Officer Burris and others testified that Ike was Ms. Zeress was a significant danger. Rather what Officer Burris did was he left cover, placed himself between Ms. Zeress and the other officers who have lethal force trained on her, put his hands on Ms. Zeress. Ms. Zeress did not at any point when Officer Burris made physical contact with Ms. Zeress, did she jerk away, pull away or resist at any point. In fact, Burris testified that he could have effectuated an armbar takedown, a significantly lower step on the use of force scale that would have not had the significant injury that using K-9 Ike did. But he said himself that once he's in the fight, K-9 Ike was going to join him in the fight. He didn't have any intent to call K-9 Ike off once he realized that he could have used a much lower degree of force in doing that. So while they may say now in defense of their lawsuit that Ms. Zeress was this horribly dangerous person and brought up a gun that was found after the arrest was effectuated, which they did not know existed at the time, their actions that night showed that they didn't believe she was dangerous. I also want to touch on the expert view. She was not dangerous? Or are you just saying that the facts kind of show that they should have known she wasn't dangerous? What was their testimony in their depositions? Their testimony and deposition is Officer Henry stated that he was not aware of any reason to believe that Ms. Zeress would be more likely to be armed than the average citizen. Officer Pertti said that there were red flags at the night, but he said, quote, I'm not going to say that the red flags indicated that she was armed. And for the incidents leading out of the supposed drug house that was Ms. Zeress' sister home, there were never weapons recovered from that. So even in their situation, they were saying that they did not have any particularized reason, even through the events of that night, to believe that she would be armed more than anyone else walking the street. Yeah. All right. I see you're out of time, but I'll give you a minute to wrap up if you want. Thank you, Ron. To touch on the experts, this court in Moore v. Geico did find that reliable expert testimony based on undisputed facts and a clear record can create a genuine dispute of material fact. That's what we have here is a significant record and video that these experts gave complete opinion on, and we believe that does create a dispute of material fact in the summary. The experts just offer their conclusions, do they not? I mean, how does that add anything other than what is your opinion, Mr. Expert, how the jury should rule on this? In this case, if it were a perfunctory, my opinion is this was reasonable or unreasonable, I would agree with you, Your Honor. However, in this situation, the experts did painstakingly detailed reports going step by step through each action that the officers take, and we believe that would do, especially in a question of reasonable police force, which is under the purview of an expert opinion, would be greatly assisting a jury in determining whether or not that use of force was reasonable at the time it was made. Okay, here we didn't get to the jury, the judge obviously has those experts' reports, but you're saying the reversible error is that he didn't consider them? Not only that, the serious reversible error is that he found on two different occasions in the district court's opinion that not only that Mr. West's persuasive in determining that. So by saying I've looked at the reports, I don't find, the court doesn't find these experts to be persuasive, that's reversible error because it's the jury who should be determining whether or not those experts are persuasive and credible, not the court at summary judgment. That's a credibility call that is reversible error. So for the experts on that opinion, the use of force and the clearly established right that had to be free from use of gratuitous force, we believe that summary judgment was inappropriately granted and the decision should be reversed and this case should be remanded back to the district court for further consideration. Thank you very much. Thank you. Any further questions, Judge Boggs, Judge Larson? No. All right. No. Thank you. The case will be submitted. You may call the next case.